*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* F.D. BEAUDET, Minor.

UNPUBLISHED
December 18, 2024
9:02 AM

No. 371122
Wexford Circuit Court
Family Division
LC No. 23-030653-NA

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

In this case, respondent-father asks us to determine whether the trial court adequately stated its reasons for ordering the removal of his minor child, FDB, from his care and custody under MCL 712A.2(b) and MCR 3.965(C)(2). We find no error in the trial court's ruling and, therefore, we affirm.

## I. BACKGROUND

In January 2023, petitioner, the Department of Health and Human Services (DHHS), filed a petition against respondent-father and respondent-mother, who is not a party to this appeal. The petition alleged that the couple placed FDB at significant risk of harm because of domestic violence, substance abuse, improper supervision, and inappropriate parenting. The allegations in the petition focused, for the most part, on respondent-mother's substance abuse issues, so the trial court authorized the petition as to respondent-mother only, removed respondent-mother from the home, and placed FDB in respondent-father's custody.

Six months later, in July 2023, the DHHS filed a supplemental petition against respondent-father and sought removal of FDB from respondent-father's custody. The petitioned alleged that respondent-father repeatedly violated the court's prior order removing respondent-mother from the home, and created instability for FDB by placing him with several different people while respondent-father stayed with respondent-mother at a campground. The petition further alleged that FDB was at risk of harm because respondent-father had an active laboratory in his home and was using potentially explosive chemicals to create THC products. The court issued an ex parte

order removing FDB from respondent-father's custody and placing him in foster care. After a preliminary hearing on the petition, the court continued its removal order.

In October 2023, respondent-father filed a motion to release FDB to him pending his adjudication pursuant to MCR 3.972. After a motion hearing, the trial court ruled that the evidence failed to establish that releasing FDB to respondent-father would likely result in serious physical harm or emotional damage to FDB. For that reason, the trial court released FDB back to respondent-father. Respondent-father subsequently pleaded no contest to the court's jurisdiction in November 2023, and his disposition was held in January 2024.

In April 2024, the DHHS filed another supplemental petition seeking removal of FDB from respondent-father's custody. The petition alleged respondent-father made minimal progress with services to address his substance abuse, mental health, parenting, and housing issues, and that this caused the DHHS to place FDB in voluntary foster care twice during the reporting period. The day before a review hearing, respondent-father reported that he had a psychotic episode and stated that he was afflicted by stress and that he felt mentally unstable and manic. A review hearing was scheduled for the same day the DHHS filed the supplemental petition. At the hearing, foster care worker, Elizabeth Rubio, updated the court on respondent-father's progress and condition. The court adopted the DHHS's recommendation to remove FDB, based primarily on respondent-father's failure to comply with his case services. The court entered a removal order on the same day, and respondent-father now appeals.

## II. DISCUSSION

Respondent-father argues that the trial court failed to properly articulate its reasons for removing FDB from his care and custody under MCL 712A.13a(9) and MCR 3.965(C). We disagree.

## A. STANDARDS OF REVIEW

We review the interpretation and application of statutes and court rules de novo. *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020). We review a trial court's factual determinations for clear error, which "requires that the reviewing court be left with a firm and definite conviction that a mistake has been made." *Id*. (quotation marks and citations omitted). Further, even if the trial court erred, "this Court will not disturb the trial court's order unless it would be inconsistent with substantial justice to permit the order to stand." *Id*. (quotation marks and citations omitted).

## B. LEGAL PRINCIPLES

The trial court explicitly relied on MCR 3.965(C) in its order removing FDB from respondent-father's custody. Because MCL 712A.13a(9) and MCR 3.965(C)(2) are "identical in substance," both the statute and court rule are applicable. *In re Benavides*, 334 Mich App 162, 168 n 2; 964 NW2d 108 (2020). Both MCL 712A.13a(9) and MCR 3.965(C)(2) provide:

> The court may order placement of the child into foster care if the court finds all of the following:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [*Williams*, 333 Mich App at 182-183 (recognizing that both the statute and court rule provide the same factors), quoting MCR 3.965(C)(2).]

Because the trial court was not terminating the parental rights of respondent-father during this removal of FDB, the trial court had to find that a preponderance of the evidence supported these factors. *Id*. at 183.

"[W]hen a statute or court rule requires factual findings as to an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review," though it need not "articulate extensive findings regarding every conceivable detail." *Id*. (citations omitted). Further, if a trial court orders removal of a child and places the child in foster care, "it must make explicit findings that 'it is contrary to the welfare of the child to remain at home,' MCR 3.965(C)(3), and 'reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required,' MCR 3.965(C)(4)." *Benavides*, 334 Mich App at 168.

## C. ANALYSIS

The trial court's removal order entered following the hearing explicitly noted that the court found reasonable cause to remove FDB under MCL 712A.2(b) and MCR 3.965(C). The trial court also made explicit findings on the record. The trial court plainly stated that respondent-father's custody of FDB presented a substantial risk of harm to the child, as contemplated in MCL 712A.13a(9)(a) and MCR 3.965(C)(2)(a), and this was also stated in the written order.

Respondent-father argues that the court relied only on its finding of his failure to follow the case service plan, but this ignores the trial court's recitation of its specific concerns about respondent-father's noncompliance. As the trial court explained, respondent-father made minimal progress toward overcoming his substance abuse problems, obtaining employment, learning parenting skills, and maintaining a suitable home. Because of these persistent problems, respondent-father had to place FDB in voluntary foster care twice within a relatively short period of time. Further, respondent-father's significant mental health problems "reached a critical point" the day before the hearing. This cumulative failure to follow his case service plan presented a

substantial risk of harm to FDB, who was negatively impacted by moves in and out of foster care because of respondent-father's failure to address these significant problems. The record amply supported these findings. Further, the foster care worker testified that these barriers posed a substantial risk of harm to FDB if he remained in respondent-father's care.

Pursuant to MCL 712A.13a(9)(b) and MCR 3.965(C)(2)(b), the removal order also explicitly stated that "[n]o provision of service or other arrangement except removal of the child(ren) is reasonably available to adequately safeguard the child(ren) from the risk of harm to the child(ren)'s life, physical health, or mental well-being," and that "no remedy other than protective custody [was] reasonably available to protect the child(ren)." In support of these findings, the order explained that respondent-father did not comply with his parent-agency treatment plan, and made little to no progress with his substance abuse and mental health issues, which placed FDB at risk of significant harm. Although the trial court did not explicitly use the language applicable to MCL 712A.13a(9)(b) and MCR 3.965(C)(2)(b), during the hearing, the court made clear that it was a major concern that the DHHS had to repeatedly place FDB into temporary foster care and the court acknowledged that removal of FDB was necessary so that respondent-father could create a safe and permanent home, without a need for recurrent moves to voluntary foster care. This was also supported by the testimony of the foster care worker, who stated that it was not feasible to continue placing FDB into voluntary foster care or respite care while respondent-father continued with his services.

The removal order addressed MCL 712A.13a(9)(c) and MCR 3.965(C)(2)(c) by stating that "continuing to reside in the home [was] contrary to the child(ren)'s welfare[.]" The order further stated that respondent-father did not comply with his parent-agency treatment agreement and "continue[d] to place the minor child at risk of significant harm." As discussed, the trial court stated on the record why respondent-father's substance abuse, mental health, and housing issues posed a continued risk to FDB, and its reasons were supported by the testimony, including the instability caused by FDB's placement into temporary care.

The court also noted that MCL 712A.13a(9)(d) and MCR 3.965(C)(2)(d) were satisfied in the removal order, which stated that reasonable efforts were made to prevent or eliminate the need for FDB's removal from respondent-father's custody. The court listed many of the DHHS's efforts to prevent FDB's removal, including foster care case management, voluntary foster care placements, parenting time, mental health services, Family Team Meetings, among many other services, including substance abuse treatment. Although the trial court did not explicitly make this finding at the hearing, it noted several times that services were in place for respondent-father, and the foster care worker testified about respondent-father's lack of engagement with his case services.

Moreover, the removal order stated that "[c]onditions of custody at the placement away from the home . . . are adequate to safeguard the child(ren)'s health and welfare," pursuant to MCL 712A.13a(9)(e) and MCR 3.965(C)(2)(e). Although the trial court did not explicitly state this language at the hearing, it noted that FDB was previously removed from respondent-father, and the record shows that conditions of FDB's placement were adequate to safeguard FDB's welfare, particularly because the DHHS sought to eliminate the uncertainty and confusion caused by repeated placements in temporary care because of respondent-father's failure to address issues that placed FDB at risk of harm.

Although the trial court did not discuss each of the factors in MCL 712A.13a(9) and MCR 3.965(C)(2) during the hearings, the removal order adequately reflected the trial court's reasoning, and the trial court created a record that was sufficient for this Court to conduct a meaningful review. See *Williams*, 333 Mich App at 183. Further, "[a] court speaks through its written orders and judgments, not through its oral pronouncements." *In re KNK*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 370841); slip op at 5 (quotation marks and citation omitted). To the extent that the trial court arguably should have discussed the factors in more detail at the hearings as well as in its order, we "will not disturb the trial court's order unless it would be inconsistent with substantial justice to permit the order to stand," see *Williams*, 333 Mich App at 178, and that is not the case. The trial court did not reversibly err in its findings of fact or by ordering of removal of FDB from respondent-father's custody.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani